## Churchey et al. v. Johnstown Motors, Inc.

*Frank P. Barnhart,* for plaintiffs; *Scanlan & Harkins,* for defendant.

GREER, J., June 27, 1932.—A verdict was rendered in the above-stated case for the plaintiff and a motion filed in behalf of defendant for a new trial and judgment n. o. v.

The action is one in trespass arising from an automobile accident, whereby a child under the age of seven years was injured by being struck on the highway by a car operated by a mechanic employed by the defendant, a corporation. The owner, James Sloan, a dentist, took his car to the repair shop of defendant, where he had been in the habit of having repairs and adjustments made, the work usually being performed by an employe named Patterson. Patterson examined the car and suggested that he take it upon the highway to determine the exact nature of the difficulty. The owner accompanied him, and in the course of the experimental trip the injury to the boy occurred.

The pleadings declared as a ground for recovery excessive speed, the driver's negligence in inspecting the car while in motion and defective brakes, all of

which elements were testified to and the conclusion thereon submitted to the jury. Defendant rendered to the owner a bill for services rendered in the course of the examination of the car.

The motion for judgment n. o. v. in favor of the defendant is based upon the premise that Patterson, the driver of the car, was the servant of the owner, James Sloan, and that this relation should be declared as a matter of law, and consequently judgment n. o. v. entered for the defendant.

To this we cannot agree, being of opinion that the determination of the status of Patterson, whether the agent of the defendant or of the owner, was for the jury. The trial judge, inter alia, charged the jury on the question of agency as follows:

"In order to return a verdict for the plaintiffs, you must find that the driver was the agent of the defendant, and the evidence must be such as would justify you, as men of ordinary reason and fairness, in saying that if the driver had exercised ordinary care he could have avoided the accident. . . . Gentlemen, the evidence is that Dr. Sloan came to this garage, a public place, and asked to have some work done, and a mechanic who was in the employ of this defendant volunteered; he had done work before for Dr. Sloan; it was a sort of work the mechanic was in the habit of doing and permitted to do as a part of his job; and it is contended that part of the work consisted in driving the car on a public highway to see how it behaved. If the jury find Dr. Sloan came to this garage and employed a mechanic connected with the garage and in the employ of the defendant to do some work, and further find that part of this process of restoring this car to its normal condition consisted in making a test on the highway as was done, the jury may find, as far as that question is concerned, that Mr. Patterson was an employe or agent of the defendant."

The facts in the case of Bell *v.* Jacobs, 261 Pa. 204, cited by counsel for defendant in his supplemental brief, approximate those in the present case. Jacobs, the owner of a car, hailed a mechanic, took him along for an inspection of his machine and, while thus engaged, the mechanic, in the operation of the car, collided with and killed a motorcyclist. The jury found under the evidence the owner guilty of negligence. Judge Endlich in his opinion, later affirmed by the Supreme Court, said:

"Nor is it without significance that the repairman, having started from defendant's garage, had not yet taken the automobile over for the purpose of fixing it. He was still, to all intents and purposes, acting for the defendant, the owner of the automobile, and as his employe."

On page 44a of the paper book is found the following:

"Q. Who was driving it (car) at the time? A. Mr. Fred Fink. Q. Tell us how he came to be driving it. A. Well, the machine was not working right, was not pulling and I wanted to go away on a Sunday—this was on a Saturday—I wanted to use the machine on a Sunday and this was on a Saturday and I stopped in to Mr. Fink on my way to market and I asked him if he would come down and get the machine and adjust the carburetor and see what was the matter with it. Mr. Fink told me he would be down about half past ten (objection) anyway, he came down and he looked at the machine. He said he would have to take the machine out. He took the machine out and he had started it down the subway on the right side, and going down Mr. Fink called my attention to a man coming up. . . ."

On page 49a (Jacobs's testimony), it was testified as follows:

"Q. It has been said that you were testing the car? A. No, sir. Q. And speeding it? A. He hadn't fixed the car yet. Q. He hadn't taken it over to fix yet, had he? A. No, sir."

284

In the testimony of J. Fred Fink, the repairman, on page 53a, he testified as follows:

"Q. What were you driving it for? (It referring to car.) A. He wanted me to test this car; the carburetor wasn't set right; I told him I would take it out."

The variance between this case and the case before us lies specifically in the following facts: The car in the case of Jacobs, defendant, had never been surrendered to anyone but the mechanic acknowledgedly employed by the owner directly to inspect it, and while so driven by the mechanic, with the owner present, the injury was suffered by plaintiff's decedent. In the case before us, the car was taken by the owner to the repair shop of defendant. The mechanic, Patterson, had made some preliminary examination, and himself suggested taking the car upon the highway for further inspection and examination, and for the work thus performed, as we have heretofore stated, defendant rendered Sloan, the owner, a bill for services.

Technically, during the period of the test being made the car was in the possession of the defendant's employe, Patterson, and under his control, and having been surrendered by the owner to the defendant for repairs and so accepted, and time and labor having been spent upon such repairs to a degree at least, the defendant had already acquired a common-law lien on the car lasting until payment be made for services rendered or the car surrendered to the possession of its owner. These are some of the facts distinguishing the present case from that of Bell *v.* Jacobs. There the controversy was submitted to a jury, and so, in our opinion, it was proper to submit the facts of the present case.

The mere presence of the owner is not, under the circumstances, of itself sufficient to apply a different principle: Rodgers et ux. *v.* Saxton, 305 Pa. 479; Menge *v.* Manthey et al., 200 Wis. 485, 227 N. W. 938; Dauenhauer *v.* Oehmler, 71 Pitts. L. J. 326.

Motion for a new trial and judgment n. o. v. refused this 27th day of June, 1932. From Henry W. Storey, Jr., Johnstown, Pa.